United States Court of Appeals
For the Eighth Circuit

_____

No. 17-3592
_____

United States of America

*Plaintiff - Appellee*

v.

Clark Wesley Betts, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 28, 2018
Filed: December 18, 2018

_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

In June 2017, a jury found Clark Wesley Betts, Jr., guilty of one count of sex trafficking of a minor under the age of 18, one count of sex trafficking of a minor under the age of 14, and three counts of distribution of crack cocaine to a person under the age of 21 in violation of 18 U.S.C. §§ 2, 1591 and 21 U.S.C. §§ 841(a)(1), 859. Betts appeals his conviction, alleging multiple evidentiary errors. Having

jurisdiction under 28 U.S.C. § 1291 and for the reasons set forth below, we affirm the judgment of the district court.[1]

I.

In early 2016, Betts, a crack cocaine addict, taught his 15-year-old daughter, T.B., how to use the drug. He began smoking crack cocaine with T.B. multiple times a week until she became addicted. On one occasion, while both Betts and T.B. were high, Betts had sexual intercourse with T.B. and told her he would continue to provide her with crack cocaine only if she continued to have sexual intercourse with him. Betts later asked T.B. if her 12-year-old cousin, A.K., would be interested in smoking crack cocaine with them. T.B. discussed the matter with A.K., and on a later date, Betts and T.B. taught A.K. how to smoke the substance. A.K. also became addicted to crack cocaine. During an overnight trip with the two girls, Betts broached the topic of having sexual intercourse with A.K., pressuring her to agree. Betts then had sexual intercourse with T.B. in front of A.K. before having sexual intercourse with A.K. in front of T.B. After the trip, Betts continued to ply the girls with crack cocaine and have sexual intercourse with them in front of each other, at times using force or restraint to do so.

In the spring of 2016, Betts first brought A.K. and T.B. to the house where he bought crack cocaine from drug dealer Vance Cooper. Betts often lingered in the house after his purchases to smoke with Cooper and Cooper's housemate, Robert Terry. Betts began bringing the girls to the house to purchase drugs and smoke with Cooper and Terry multiple times a week. On one occasion, T.B. and A.K. performed a sexual "dance" for Betts, Cooper, and Terry, for which Cooper gave them crack cocaine. On another occasion, Betts dropped A.K. off at the house so that she could

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

exchange sexual acts for crack cocaine for herself and Betts. Betts agreed to allow T.B. to do the same.

Betts thought one of T.B.'s friends, M.M., was attractive and wanted to introduce her to Cooper. Betts brought T.B. and M.M. to Cooper's residence and purchased crack cocaine for them. M.M. did not exchange any sexual acts for the drugs because she quickly had to leave, having received a phone call from her mother.

In late March 2016, Betts was arrested for a probation violation. A few months later, Cooper and Terry were arrested on federal drug charges. Cooper identified Betts as his most frequent customer, admitting that Betts had trafficked his female relatives in exchange for crack cocaine. Law enforcement conducted welfare checks on the girls. In her first forensic interview in August 2016, A.K. denied that Betts allowed Cooper to engage in sex with her or T.B. However, in her second interview in February 2017, she admitted that she lied and that the allegations were true. In April 2017, a grand jury indicted Betts for sex trafficking and distribution of crack cocaine.

At Betts's trial, the government tied Betts's trafficking of T.B. and A.K. to a larger pattern of grooming. It sought to introduce evidence of an incident occurring in March 2015, at M.M.'s birthday party, at which Betts plied T.B., M.M., and other minor girls with alcohol and attempted to elude a police chase. The government also wanted to introduce evidence of Betts's prior sexual abuse of T.B. and A.K. as well as physical violence he exhibited and that T.B. and A.K. observed. Betts moved in limine to exclude the evidence. The district court admitted the evidence of the March 2015 incident and conditionally admitted evidence of Betts's past violent behavior provided that the government's expert linked the girls' observation of Betts's violence to their later acquiescent behavior. When an expert on sexual abuse victims

testified that viewing an abuser's violence makes a victim less likely to resist or disclose abuse, the district court admitted the evidence.

The government sought to exclude Betts's evidence that T.B. and A.K. had returned to Cooper's house to exchange sexual acts for crack cocaine after Betts's arrest and while he was incarcerated. Pursuant to Fed. R. Evid. 412, the district court excluded the sexual component of the testimony, allowing the jury to hear only that T.B. and A.K. had returned to the house for drugs.

Both T.B. and A.K. testified at Betts's trial. During cross-examination of A.K., defense counsel asked whether her initial forensic interview "exonerated" Betts. The government objected, noting the question called for a legal conclusion. The district court sustained the objection. It then prevented Betts's counsel, who was holding a transcript of A.K.'s forensic interview, from going through the transcript to point out inconsistencies between it and her later testimony, stating, "Once she admitted she made the inconsistent statements [in the first interview], the extrinsic [evidence] of [them] is not admissible[.]" The jury found Betts guilty on all counts. The district court sentenced Betts to life imprisonment on the sex trafficking counts and 40 years on each of the three drug charges, all to run concurrently.

II.

Betts first contends that the district court violated his Sixth Amendment right to confront A.K. when it restricted his cross-examination of her. "We review evidentiary rulings regarding the scope of a cross examination for abuse of discretion, but where the Confrontation Clause is implicated, we consider the matter *de novo*." United States v. Kenyon, 481 F.3d 1054, 1063 (8th Cir. 2007) (citations omitted). While "the Confrontation Clause guarantees an *opportunity* for effective cross-examination," it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474

U.S. 15, 20 (1985) (per curiam). "To state a viable Confrontation Clause challenge to the district court's decision to limit cross-examination, the defendant must establish 'that a reasonable jury might have received a *significantly* different impression of a witness's credibility had counsel been permitted to pursue the proposed line of cross-examination.'" United States v. Petters, 663 F.3d 375, 382 (8th Cir. 2011) (quoting United States v. Dale, 614 F.3d 942, 957 (8th Cir. 2010)). "We will not reverse a court's decision to limit cross examination 'unless there has been a clear abuse of discretion and a showing of prejudice to the defendant.'" United States v. Williams, 796 F.3d 951, 961 (8th Cir. 2015) (quoting Petters, 663 F.3d at 382).

Betts alleges that the district court erred in precluding him from further cross-examination of A.K. with respect to her first forensic interview, arguing this prevented him from fully presenting his defense that he was entirely uninvolved in sex trafficking the girls. However, prior to the district court's limitation of his questioning, Betts had the opportunity to mention several inconsistencies between A.K.'s first forensic interview and her later allegations without objection from the government or the district court. For instance, under questioning, A.K. admitted that she originally suggested T.B., not Betts, first introduced her to crack cocaine and that Betts did not want the girls to start the drug. Even after the district court's intervention, Betts cross-examined A.K. about inconsistencies in her second forensic interview, including that she had said Betts was passed out during the sexual "dance" and that he did not sell her and T.B. on purpose. At one point, defense counsel asked A.K., "You stated to law enforcement . . . that Mr. Betts did not have any sexual activity with you or supply drugs to you?" and A.K. responded, "Yes." That defense counsel asked A.K. about the crux of his defense—that he was entirely uninvolved in trafficking her—particularly suggests that the cross-examination in this case was not unfairly limited. Additionally, because defense counsel demonstrated that A.K.'s testimony was inconsistent in various respects, Betts has failed to establish that the jury would have received a "*significantly* different impression" of A.K.'s credibility

-5-

had he been able to cross-examine A.K. further as to inconsistencies between her trial testimony and the prior interviews. Petters, 663 F.3d at 382. Thus, we find that the district court's action did not violate the Confrontation Clause or constitute a clear abuse of discretion.

III.

Betts next argues that the district court violated his Sixth Amendment confrontation rights by excluding, under Fed. R. Evid. 412, evidence demonstrating that T.B. and A.K. returned to Cooper's house to exchange sexual acts for crack cocaine while Betts was in post-arrest custody. We review evidentiary rulings for abuse of discretion. United States v. Roy, 781 F.3d 416, 419 (8th Cir. 2015). "[W]here the Confrontation Clause is implicated, we consider the matter *de novo*." Kenyon, 481 F.3d at 1063 (citation omitted).

In sexual misconduct cases, Rule 412 generally excludes "any evidence about a victim's sexual behavior[.]" Wilson v. City of Des Moines, 442 F.3d 637, 642 (8th Cir. 2006) (citing Fed. R. Evid. 412(a)). Rule 412's limitations "on a defendant's ability to present evidence '[are] not arbitrary or disproportionate to the purpose it is designed to serve,' because the exclusion serves an important interest—the prevention of 'potential embarrassment or harassment of alleged victims of sexual abuse.'" United States v. Elbert, 561 F.3d 771, 776 (8th Cir. 2009) (quoting United States v. Bordeaux, 400 F.3d 548, 558 (8th Cir. 2005)).

Here, Betts's argument fails both procedurally and substantively. Procedurally, a party seeking to introduce evidence of a victim's other sexual behavior under one of Rule 412's exceptions must "file a motion that specifically describes the evidence and states the purpose for which it is to be offered" no less than 14 days before trial. Fed. R. Evid. 412(c). The motion must notify the victim or her guardian of the use of the evidence. Id. Betts filed no such notice in this case. This failure alone

constitutes "sufficient grounds to uphold the district court's decision" to exclude the evidence. Roy, 781 F.3d at 421 (quoting United States v. Eagle, 137 F.3d 1011, 1015 (8th Cir. 1998)).

Betts attempts to avoid this procedural bar by alleging that, substantively, the evidence does not constitute "other sexual behavior" by the victims but rather the same behavior—engaging in sexual acts with Cooper and Terry—alleged throughout the case. Therefore, he argues he does not need to qualify his evidence under a Rule 412 exception because Rule 412 should not apply at all. However, that the girls prostituted themselves at some later date does not make it any less likely that, during the times alleged, Betts trafficked them, too. See id. at 420 ("The victim's participation in prostitution either before or after the time period in the indictment has no relevance to whether [the defendant] . . . cause[d] her to engage in commercial sex."). This is particularly true given that both A.K. and T.B. were minors who could not consent to engaging in sexual activity with another. See Elbert, 561 F.3d at 777 ("Whether the children engaged in acts of prostitution before or after their encounters with [the defendant] is irrelevant, and would only prove other people may be guilty of similar offenses of recruiting, enticing, or causing these victims to engage in a commercial sex act."). Furthermore, the district court did not, in fact, preclude Betts from presenting any such evidence. The jury heard that the girls returned to Cooper's house for drugs and that Terry committed a sex act against A.K. after Betts's incarceration. Therefore, the district court did not violate Betts's confrontation rights or abuse its discretion in limiting the evidence.

IV.

Finally, Betts contends that the district court erred in admitting prior bad acts evidence against him. "We review a district court's decision to admit evidence for an abuse of discretion." United States v. O'Dell, 204 F.3d 829, 833 (8th Cir. 2000) (citing United States v. McMurray, 34 F.3d 1405, 1411 (8th Cir. 1994)).

-7-

constitutes "sufficient grounds to uphold the district court's decision" to exclude the evidence. Roy, 781 F.3d at 421 (quoting United States v. Eagle, 137 F.3d 1011, 1015 (8th Cir. 1998)).

Betts attempts to avoid this procedural bar by alleging that, substantively, the evidence does not constitute "other sexual behavior" by the victims but rather the same behavior—engaging in sexual acts with Cooper and Terry—alleged throughout the case. Therefore, he argues he does not need to qualify his evidence under a Rule 412 exception because Rule 412 should not apply at all. However, that the girls prostituted themselves at some later date does not make it any less likely that, during the times alleged, Betts trafficked them, too. See id. at 420 ("The victim's participation in prostitution either before or after the time period in the indictment has no relevance to whether [the defendant] . . . cause[d] her to engage in commercial sex."). This is particularly true given that both A.K. and T.B. were minors who could not consent to engaging in sexual activity with another. See Elbert, 561 F.3d at 777 ("Whether the children engaged in acts of prostitution before or after their encounters with [the defendant] is irrelevant, and would only prove other people may be guilty of similar offenses of recruiting, enticing, or causing these victims to engage in a commercial sex act."). Furthermore, the district court did not, in fact, preclude Betts from presenting any such evidence. The jury heard that the girls returned to Cooper's house for drugs and that Terry committed a sex act against A.K. after Betts's incarceration. Therefore, the district court did not violate Betts's confrontation rights or abuse its discretion in limiting the evidence.

IV.

Finally, Betts contends that the district court erred in admitting prior bad acts evidence against him. "We review a district court's decision to admit evidence for an abuse of discretion." United States v. O'Dell, 204 F.3d 829, 833 (8th Cir. 2000) (citing United States v. McMurray, 34 F.3d 1405, 1411 (8th Cir. 1994)).

-7-

Under Fed. R. Evid. 404(b), the government may introduce extrinsic evidence of a defendant's prior bad acts only for a limited class of permitted uses, such as proving motive. However, Rule 404 does not limit intrinsic evidence offered to provide "the context in which the charged crime occurred." United States v. Johnson, 463 F.3d 803, 808 (8th Cir. 2006) (citing United States v. Forcelle, 86 F.3d 838, 842 (8th Cir. 1996)). Nonetheless, the probative value of intrinsic evidence must not be substantially outweighed by its prejudicial effect. O'Dell, 204 F.3d at 834.

The district court admitted evidence of Betts supplying alcohol to minor girls, including T.B. and M.M.; sexually assaulting T.B. and A.K.; and behaving violently in front of T.B. and A.K. At a motion hearing, the district court identified these behaviors as being intrinsic to the government's "theory of the case" that Betts "progressively groomed" the girls "by first supplying alcohol" and eventually "pimping the girls out to his crack cocaine suppliers." At trial, it again deemed the evidence intrinsic and did not include a Rule 404(b) jury instruction.

The evidence here supplied necessary context by "fill[ing] the gaps in the jury's understanding of the crime charged." United States v. Young, 753 F.3d 757, 770 (8th Cir. 2014). Evidence of Betts's grooming of T.B. and A.K. provided contextual background explaining that the girls used hard drugs and participated in sexual activity with their father and uncle. The evidence allowed the jury to reasonably infer that Betts used drugs and alcohol as a "carrot" and violence as a "stick" to control his relationship with the girls over time. See United States v. Campbell, 49 F.3d 1079, 1084 (5th Cir. 1995) (describing a similar pattern of treatment in a sex trafficking context). The evidence was more probative than prejudicial, as it demonstrated that Betts actively controlled the girls' behavior rather than passively remained present as bad acts occurred around him. Therefore, the district court did not abuse its discretion in admitting the prior bad acts evidence.

V.

For the foregoing reasons, we affirm.

_____

-9-